LONG ISLAND R. CO. v. SHINNECOCK HILLS & PECONIC BAY REALTY CO. et al.

(Supreme Court, Special Term, Suffolk County. August 31, 1911.)

1. RAILROADS ( 99*)—CONSTRUCTION—CONTRIBUTION TO COST.

Where plaintiff railroad company had bound itself to construct certain under highway crossings by an agreement with a realty company before defendant town had been consulted as to the acceptance of the highway, and was not induced to make such agreement by any promise of the town to accept the highways, the town's refusal to accept them, except on performance of certain specified conditions, did not entitle the plaintiff to recover any portion of the cost of the crossings from the town.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

2. RAILROADS (§ 99*)—CONSTRUCTION—CROSSING HIGHWAY—COMMISSIONERS—JURISDICTION.

Railroad commissioners had no jurisdiction to order an under railroad crossing, where the highways had not been dedicated and accepted.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

3. RAILROADS (§ 99*)—CONSTRUCTION—CROSSING HIGHWAY—CONTRIBUTION TO COST.

Where a town promised to accept certain new highways, the course of which traversed a railroad right of way, built by a realty company with which plaintiff railroad company had agreed to construct certain under crossings, the town's promise was to accept a highway completed with the crossings in place, and therefore was not liable for any part of the expense of constructing the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

Suit by the Long Island Railroad Company against Shinnecock Hills & Peconic Bay Realty Company and the Town of Southampton. Judgment for defendants.

Joseph F. Keany (Joseph M. Belford, of counsel), for plaintiff.
Swanstrom & Keyes (Conrad Saxe Keyes, of counsel), for defendant Shinnecock Hills & Peconic Bay Realty Co.
Timothy M. Griffing, for defendant Town of Southampton.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

JAYCOX, J. The plaintiff is a railroad corporation operating a railroad in the county of Suffolk and elsewhere upon Long Island. The defendant the Shinnecock Hills & Peconic Bay Realty Company owns certain premises on the Shinnecock Hills in the town of Southampton, through which said railroad runs. In May, 1906, the Railroad Company and the Realty Company entered into an agreement by which the Railroad Company agreed to build a new station to cost about $1,000 at a new location near the west end of the Hills, to be mutually agreed upon; to repair and paint the Shinnecock Hills station and put in three undergrade crossings for the public road, one at each end of the new north road which the Realty Company was then building, the other for a cross-road just west of the Shinnecock Hills station. In passing, the crossing upon the cross-road is not here in dispute. That was built solely at the cost of the Railroad Company.

In return for the above, the Realty Company was to give to the Railroad Company a quitclaim deed for all the right of way they occupied through the property of the Realty Company, a warranty deed for additional right of way, arrange with the Shinnecock Hills Golf Club to carry out the agreement as to a quitclaim deed for existing right of way and a warranty deed for additional land, and give all possible assistance to secure title to the Railroad Company's right of way. The proceedings for putting in the three crossings were to be taken under the railroad crossing act before the railroad commissioners. The Railroad Company then undertook the necessary proceedings before the Railroad Commission and published the notice of a meeting of the railroad commissioners. When the meeting was held, on the 1st day of November, 1906, the Railroad Company and the Realty Company appeared. The supervisor, the highway commissioner, and several of the justices of the peace of the town of Southampton appeared. Apparently at this meeting it was for the first time discovered that the roads in question were not legally laid out highways of the town; and some discussion, as to whether or not they were highways and as to the effect upon the question of expense if they were not, arose. The supervisor was asked, if a deed were given to the town of Southampton for the roads in question, would the town accept it; and to this the supervisor replied, "Yes." Later the question was asked again, in a slightly different form, and then the supervisor said, "I think so. They must agree to put them in shape, and we will accept them as other highways are." Apparently no work had at this time been done on these crossings, as on the 15th inst. the president of the Railroad Company writes that the work cannot be undertaken until the company gets the decision of the Railroad Commission. On the 20th of November, 1906, a meeting of the town board of Southampton Town and the highway commissioners is held, which is attended by representatives of the Realty Company. The question of the acceptance of these highways is discussed, and the meeting adjourns, and the highway commissioners examine the highways in question. They again convene the same day and pass a resolution, in which it is said:

"It was voted to accept four pieces of highway on Shinnecock Hills to be built and dedicated by said company, and Mr. Greene was appointed a committee on the part of the commissioners of highways and the town board to confer with said company and prepare papers for record of these highways; one of such highways to be sixty (60) feet wide running east and west across Shinnecock Hills on the north side, and three to be forty-nine and one-half (49½) feet wide running north and south, as located on a map now before the board."

The following day the president of the Realty Company notified the Railroad Company and the railroad commissioners that the town of Southampton had accepted the highways. On December 4, 1906, the railroad commissioners made an order eliminating the grade crossings upon said highways and providing for the building of the two new crossings under the railway. The Railroad Company thereafter built these two crossings under the railway, in accordance with said order, the total cost of which was $17,905.28, no part of which has been paid by either the state or the town. Some negotiations were then had between the town board, the highway commissioners, and the Realty Company in relation to obtaining the necessary consents and preparing the formal papers; but nothing definite was done until, at a meeting of the highway commissioners on the 3d day of June, 1908, a resolution was passed, of which the following is a copy:

"Moved and carried that the secretary inform the Shinnecock Hills & Peconic Bay Realty Company that the town board and commissioners of highways are not ready to accept the proposed roads across the property of said company until the following objections and conditions are met as per original agreement:

"(1) Complete list of consents as to rights of way and release of damages.

"(2) Road to be completed at the Canoe place terminus where it connects with the main road near the bridge.

"(3) The embankments properly railed.

"(4) The proper turn of road at the place where it crosses under the track east of present bell tower.

"(5) Proper provision to take care of the water under the said railroad at that crossing.

"(6) The proper completion of the present road as to removal of sand from same and in good condition as agreed 'in condition satisfactory to the town board at the time of acceptance.'

"(7) Location of material to keep the highways after acceptance with agreement in writing to file in county clerk's office.

"(8) Said agreement to cover right of town to use the three cross-roads between Shinnecock and Peconic Bay."

As to the first condition mentioned in the resolution, it is conceded that the consents have not been filed.

As to the second I find that the road was built to the Canoe place terminus as it then existed.

The embankments have not been railed.

I am of the opinion that the road is built at the place where it crosses the track upon the curve shown the town board.

Proper provision has been made for caring for the water.

There is no proof of any sand in the road as stated in No. 6.

That the Realty Company did not agree to furnish such an agreement as is set forth in paragraph 7 and is willing to furnish loam in accordance with terms stated by it, to wit, there would be no doubt

the town could have all the material it needed, at least as long as the Realty Company owned the property.

The eighth condition has not been performed, and the town is entitled to its performance.

Matters remained in this condition until this action was brought, and in it the plaintiff seeks to compel the Realty Company to convey or dedicate said roads to said town and that the town accept the same, or, if it refuse so to do, it be required to pay plaintiff one-half the cost of such underground construction, to wit, $8,923.32; or, if it accept such conveyance, then that said town pay the plaintiff one-quarter of the cost of such construction, to wit, the sum of $4,461.66, and that, in the event of the Realty Company refusing to convey said roads to the town, the Realty Company be required to pay one-half of the cost of said construction, to wit, $8,923.32.

The plaintiff cannot recover herein for three reasons:

[1] First. It was not induced to enter upon this work by any promise or representation upon the part of the town which a court of equity can now lay hold of and enforce upon the ground that, the Railroad Company having performed its part, good conscience requires the town to perform its part. The Railroad Company had bound itself by agreement with the Realty Company to do this work before the town was brought into the matter. The Railroad Company was by its agreement bound to do this work, and the promise to accept the highway was not the clause which induced it to make that agreement. The proceedings before the railroad commissioners were taken to lessen the expense, and not as an essential part of the agreement.

[2] Second. It is the "street, avenue or highway" closed which gives the railroad commissioners jurisdiction, and not the means of diversion of the travel after the street or highway is closed. Matter of N. Y. C. & H. R. R. Co., 200 N. Y. 121, 93 N. E. 515. Therefore the railroad commissioners had no jurisdiction, and the promise of the town to accept the new highway in the future would give the commissioners no jurisdiction. The highway must be dedicated and accepted before the order is made by the commissioners and must be the highway to be closed.

[3] Third. The promise to accept was to accept the new highway, the highway to be built by the Realty Company. It was therefore, as I view it, a promise to accept a highway when completed. This naturally meant with the undergrade crossings in place, and not a highway in which there should be breaks or intervening spaces which were not open to public travel. It therefore follows that, if the town should accept the dedication of this highway, it would not be liable for any part of the expense of constructing the undergrade crossing.

The complaint should therefore be dismissed; but as the plaintiff has built a great public improvement, beneficial alike to the defendants and the public generally, it should be without costs.